IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANITA MARIA PARKER,<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social Security<br>Administration,<br><br>        Defendant.<br>_____ | Civ. No. 3:15-cv-01002-MC<br><br>OPINION AND ORDER |

MCSHANE, Judge:

      Plaintiff Anita Parker brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On June 21, 2011, plaintiff applied for Disability Insurance Benefits. Tr. 158-61. Her application was denied initially and upon reconsideration. Tr. 111-16. On December 10, 2013, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 35-72. On January 10, 2014, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 13-30. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court.[1] Tr. 1-5.

## STATEMENT OF FACTS

Born on May 25, 1958, plaintiff was 52 years old on the alleged onset date of disability and 55 years old at the time of the hearing. Tr. 41, 158. Plaintiff obtained a four-year college degree, majoring in criminal justice and minoring in psychology. Tr. 42, 176. She worked previously for the State of Oregon in the Child Protective Services department. *Id.* Plaintiff alleges disability as of June 21, 2010, due to depression, anxiety, fibromyalgia, degenerative disk disease, and chronic right arm pain. Tr. 175.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] **Error! Main Document Only.** The record before the Court constitutes over 600 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ determined plaintiff had the following medically determinable, severe impairments: cervical spine degenerative disc disease, fibromyalgia, somatoform disorder, and osteoarthritis. *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 21.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work, except that:

> She can lift up to 20 pounds occasionally and lift and/or carry up to 10 pounds frequently with both upper extremities or with the left upper extremity alone. With the right upper extremity alone [she] can occasionally lift or carry articles like docket files, ledgers and small tools. She can stand and/or walk [or sit] for about six hours in an eight-hour workday with normal breaks . . . She can occasionally reach overhead (shoulder level and above) [or push and pull hand controls] with the right upper extremity. [She] can frequently [handle and finger or] reach below shoulder level with the right upper extremity . . . She should not crawl or climb ladders, ropes or scaffolds. [She] should avoid extreme heat, extreme cold, vibrations and hazards. She can carry out simple and detailed instructions.

Tr. 21.

4 – OPINION AND ORDER

At step four, the ALJ determined plaintiff could perform her past relevant work as a social worker. Tr. 29. In the alternative, the ALJ found that, based on the VE's testimony, there were a significant number of jobs in the national and local economy that plaintiff could perform despite her impairments, such as appointment setter and receptionist.[2] Tr. 30.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not fully credible; and (2) rejecting opinion evidence from James Heder, M.D., and Scott Bean, M.D.

**I.    Plaintiff's Testimony**

Plaintiff asserts that the ALJ wrongfully discredited her subjective symptom testimony concerning the severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial

---

[2] The representative occupations identified by the VE based on the ALJ's dispositive hypothetical question were significantly less exertionally demanding than plaintiff's RFC. *See* Tr. 65-69 (VE testifying that such "office type jobs" typically rarely involve standing or walking, overhead reaching, or the need to lift or carry more than five pounds).

5 – OPINION AND ORDER

evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that she is primarily unable to work due to right arm pain. Tr. 51-56. While she endorsed symptoms from her other conditions, which had persisted for several years, plaintiff explained that "the thing that led [her] to stop working was [her] arm." Tr. 56. When asked to describe a typical day, plaintiff responded that she does "very little." Tr. 45; *see also* Tr. 55 ("I don't do anything"). When prompted by the ALJ to recount "what [she] actually do[es]," plaintiff stated: "I lay down on my bed. I am watching TV for something to do. I read. I take care of myself as best I can." Tr. 45. She denied doing anything for enjoyment and stated that she did not provide any care to her elderly mother, with whom she lives. *See* Tr. 44-46 (plaintiff clarifying that, while she had earnings from the State of Oregon for serving as a caregiver to her mother, she actually paid others to do the work and never furnished any "care for her other than [being] present").

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully credible due to her inconsistent statements, activities of daily living, ability to work for several years despite her longstanding impairments, tendency to exaggerate, and the lack of corroborating medical evidence. Tr. 22-25.

Specifically, the ALJ impugned plaintiff's credibility because of contradictory reports in the record regarding when and why she became unable to work. Tr. 23. An ALJ may discredit a plaintiff's subjective symptom testimony if she has given prior inconsistent statements or has

testified in ways that appear to be less than candid. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Substantial evidence supports the ALJ's conclusion in the case at bar.

In July 2010, plaintiff reported to her rheumatologist, Anna Macasa, M.D., that "[s]he started experiencing right arm pain two years ago, related to repeated motion at work, but no direct trauma." Tr. 558. However, later that same month, plaintiff communicated to Ezra Rabie, M.D., the Workers' Compensation doctor performing an independent medical exam, that she "started developing [right arm] pain in mid-June [and] had two weeks of right arm pain without any discreet event precipitating the pain." Tr. 520. She described to Dr. Rabie her workplace conditions as follows:

> she adjusts [her keyboard] about two to three times per day – once when she arrives (pulling it out from under the desk), maybe once during the shift (minor personal adjustment) and once again at the end of the shift (tucking it back under the desk). Adjustment time takes about 10 to 15 seconds. It is an under-the-desk keyboard with a tray knob that has to be turned loosened in order to move the keyboard . . . . she is not aware of any other work activities or ergonomics of her work station that she feels are injurious. She has been doing this job as mentioned for the past four years at the same work station without any history of injury or problems. She states there is no mechanical malfunction of the keyboard tray or its adjustment mechanism [and] did not notice a sudden onset of pain with the performance of this activity on any particular singular occasion.

Tr. 522.

Less than two months later, in September 2010, she complained to Raylene Gordin, M.D., the orthopedist treating her for her alleged Workers' Compensation injury, of having to adjust her keyboard "two to six times per day" because "the bolt is slightly stripped." Tr. 545. She explained to Dr. Gordin that the repetitive adjusting of her keyboard "contributed to the onset of her [right arm] symptoms," which arose "[i]n May of this year." *Id.* The next day she stated to Dr. Heder, her general practitioner, that "[s]he can remember very specifically the

7 – OPINION AND ORDER

onset" of her right arm pain from "when she was pulling [at the knob on her keyboard] one time." Tr. 395.

Yet, in June 2011, she told Dr. Heder that her right arm pain was related to several workplace conditions, including a vent that "produced a lot of cold frigid air on her," "some electrical wires [from which] maybe she got an electrical sho[ck]," and having "to brace herself to twist the keyboard tray" repetitively. Tr. 423. In July 2011, she communicated to Dr. Heder that she injured her arm one day while "pressing against the knob [under her desk] . . . suddenly she had pain into her right arm so severe that she jumped out, ran to the bathroom, vomited several times." Tr. 424. As the ALJ found, these contradictory statements concerning the onset of plaintiff's allegedly disabling right arm pain undermine her credibility.

Additionally, the ALJ noted that plaintiff's hearing testimony pertaining to her role as a caregiver for her mother conflicted with the other evidence of record. Tr. 24. In June 2011, plaintiff reported to mental health nurse practitioner Rita Hurlong that she was "the adult relative foster care provider for her mother," who was "high maintenance." Tr. 443. In June 2013, she remarked that she was "staying [at her] mom's house this week" and feeling "slightly resentful [due to the] lack of time for herself." Tr. 622. The next week plaintiff reported she was "not happy being [a] 24 [hour] nurse to mom." Tr. 623. In July 2013, plaintiff stated that caring "for [her] ill 83 [year old] mom [was] difficult" and she was sleeping with one "ear open for mom." Tr. 624. This evidence suggests that plaintiff played a larger role in providing care to her mother than alleged at the hearing. Although plaintiff attempts to characterize these activities as more favorable to her claim of disability, because the ALJ's interpretation of the evidence was

reasonable, it must be upheld. *See Febach v. Colvin*, 580 Fed.Appx. 530, 531 (9th Cir. 2014) (affirming the ALJ's credibility finding under analogous circumstances).

Further, the ALJ determined that "the record indicates that [plaintiff] is more active than she has portrayed in connection with this claim." Tr. 24. Activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted). In response to direct questioning from the ALJ, plaintiff denied any daily activities; other aspects of her hearing testimony nonetheless revealed that she visited her boyfriend at his property, attended regular medical appointments, ran errands such as going to the bank or grocery shopping, occasionally dined out or went of walks, and engaged in minimal household chores. *Compare* Tr. 45, 55, *with* Tr. 47, 55, 58. As discussed above, plaintiff furnished some form of care to her mother. There is also evidence in the record demonstrating that plaintiff was engaging in gardening and/or other outdoor pursuits. *See* Tr. 583 (Dr. Heder observing in October 2012 that plaintiff's right arm was "well tanned" with no muscular atrophy), 618 (plaintiff remarking to Ms. Hurlong in March 2013 that she was "spending more and more" time out at her boyfriend's ranch, where she enjoyed "taking seeds and planting them"); *see also* Tr. 587 (plaintiff seeking treatment from Dr. Heder in July 2013 for poison oak on her right arm, with Dr. Heder questioning just "how much she was using the arm to get that").

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason

exists. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's credibility finding is affirmed.

## II.    Medical Opinion Evidence

Plaintiff also contends that the ALJ improperly rejected medical opinions from Drs. Heder and Bean. There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.*

### A.    Dr. Heder

The record before the Court contains treatment records from Dr. Heder spanning back to June 2008. Tr. 318. Initially, Dr. Heder provided treatment, predominantly in the form of medication management, for plaintiff's fibromyalgia, anxiety, and degenerative disk disease. Tr. 318-73. In mid-June 2010, he began providing care for plaintiff's right arm pain.[3] Tr. 374-424, 479-83, 569-77, 582-90.

Dr. Heder noted at various points in plaintiff's treatment records that she was unable to work or disabled due to her right arm pain. *See, e.g.*, Tr. 386, 391, 403-04, 409, 411, 414. The doctor also authored letters in 2011 and 2012 regarding plaintiff's condition to either her employer or insurer. Tr. 317, 416, 566, 577. In both the letters and chart notes, Dr. Heder noted

---

[3] Dr. Heder was plaintiff's "primary care physician [and] not the physician . . . responsible for her . . . Workers' Comp type problems." Tr. 416. Thus, during the period in which plaintiff's Workers' Compensation claim was pending, Dr. Heder did not provide treatment for her right arm pain. *See, e.g.*, Tr. 380-82, 391, 394, 96, 400, 403, 416.

10 – OPINION AND ORDER

the confusion of plaintiff's providers, including himself, regarding the underlying basis of her right arm pain, but nonetheless opined that she "is unable to use her right arm in any meaningful activity." Tr. 317, 396, 410-11, 416, 566. He denoted the psychological component of plaintiff's condition and recommended that she obtain "aggressive psychiatric therapy" with someone other than Ms. Hurlong. Tr. 409, 411, 414, 416, 566, 577.

The ALJ assigned "no weight to the various opinions from Dr. Heder that [plaintiff] was 'disabled' or temporarily unable to work" because "[i]t is not clear what definition of disability Dr. Heder utilized and whether or not the claimant is disabled and unable to work is an issue reserved to the Commissioner." Tr. 26. The ALJ rejected Dr. Heder's statements that plaintiff "suffered from severe arm pain and was unable to use the right arm in any meaningful activity" because "the evidence does not establish reflex sympathetic dystrophy/complex regional pain syndrome as a medically determinable impairment and Dr. Heder's opinion that the pain was disabling regardless of the cause does not provide a basis for awarding disability benefits under the Act." *Id.* In addition, the ALJ noted that "the record contains no function-by-function assessment from Dr. Heder other than his opinions that [plaintiff] was unable to drive because of her right arm, but could stand for eight hours." Tr. 27. Finally, the ALJ found that Dr. Heder's statements that plaintiff "was unable to use her right arm was primarily based on [her] less than fully credible subjective complaints" and contradicted by her daily activities, including the fact that she "drives despite her right arm." Tr. 26-27.

An ALJ need not accept a medical opinion that a claimant is "disabled" or "unable to work" because the ultimate issue of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527; SSR 96-5p, *available at* 1996 WL 374183. Likewise, an ALJ can disregard a medical

11 – OPINION AND ORDER

report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). An ALJ can also reject a medical opinion that is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible" or inconsistent with the evidence of record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation and internal quotations omitted).

After carefully reviewing the record before it, the Court finds that the ALJ did not commit harmful legal error in evaluating Dr. Heder's opinion. Significantly, Dr. Heder described plaintiff's fibromyalgia as disabling while was she was still working and the majority of the evidence that references disability after the alleged onset date does not suggest an inability to engage in any substantial gainful activity for a continuous period of at least 12 months. Tr. 368, 386, 391, 40-04. As a result, it was reasonable for the ALJ to conclude that Dr. Heder's use of the term "disabled" did not correspond to the definition employed by the Commissioner. In any event, because Dr. Heder's statements that plaintiff was disabled or unable to work are conclusory, the ALJ was not required to give them deference. *McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) (as amended).

Regarding Dr. Heder's statements relating to plaintiff's severe arm pain and corresponding incapacity, the Court does not agree with the ALJ's finding concerning the lack of an underlying medically determinable impairment. Even assuming that plaintiff failed to meet the diagnostic criteria for reflex sympathetic dystrophy/complex regional pain syndrome, the ALJ found that plaintiff's cervical spine degenerative disc disease and somatoform disorder were medically determinable and severe at step two. Tr. 15. As Dr. Heder repeatedly indicated, despite

12 – OPINION AND ORDER

the fact that there could be a physical basis for some of plaintiff's right arm pain, the severity was likely a "conversion-type reaction" arising from unresolved issues pertaining to plaintiff's prior employment. Tr. 396, 398, 409-10. The other medical evidence of record supports this conclusion. *See* Tr. 546 (Dr. Gordin reporting that, "[a]lthough she may have a generalized overuse condition of the upper extremity, it would certainly appear to be substantially out of proportion to the history and object circumstances . . . Even in the presence of any actually pathology that may come to light . . . it is my strong opinion that she mostly needs psychiatric treatment"), 635 (Dr. Bean noting that degenerative changes to plaintiff's cervical spine were "likely" responsible for a portion of her right arm pain). As such, contrary to the ALJ's assertion, the record demonstrates the existence of medically determinable impairments that, either singly or in combination, could be responsible for plaintiff's symptoms.

Nevertheless, because the ALJ provided other legally sufficient reasons, supported by substantial evidence, for discrediting the remaining portions of Dr. Heder's reports, this error was inconsequential to the ultimate non-disability determination. Namely, an independent review of the record confirms that Dr. Heder's various opinions were largely based on plaintiff's un-credible self-reports. Critically, Dr. Heder never objectively evaluated plaintiff's arm as she would not allow him to complete an examination due to pain. Tr. 374-424, 479-83, 569-77, 582-90. Indeed, Dr. Heder denoted plaintiff's inability to use her right arm in the "subjective" portion of his treatment notes. *Id.*; *see also* Tr. 426, 431-32, 485 (normal MRI and electro diagnostic results related to the right arm). A prime example of this is plaintiff's ability to drive: in August 2010, Dr. Heder recorded in the subjective section of his report that plaintiff "was unable to drive because of the pain in her right arm"; however, at the hearing, plaintiff testified she continues to

13 – OPINION AND ORDER

drive, even when it is not a necessity, and that none of her medical providers have indicated that she should not be driving. *Compare* Tr. 386, *with* Tr. 45, 58-59. Moreover, Dr. Heder did not observe any signs of atrophy or frozen should, despite plaintiff's reports that she was not using her right arm. *Compare* Tr. 386, 394, 400, 403, 405, 411-12, 420, 584, *with* Tr. 420, 422, 425, 577, 583. In light of this evidence, the ALJ's assessment of Dr. Heder's opinion evidence is upheld.[4]

### B. Dr. Bean

Dr. Bean assumed care for plaintiff when Dr. Heder retired in 2013. In December 2013, Dr. Bean filled out a check-the-box form prepared by plaintiff's attorney. Tr. 631-35. Plaintiff testified that she had seen Dr. Bean twice before meeting with him the day before the hearing; he requested her assistance in completing that form in light of their newly-established treatment relationship. Tr. 48-49. Accordingly, plaintiff explained that Dr. Bean went through the form with her and "answer[ed] the questions as he was though through them." Tr. 49. The doctor checked boxes reflecting that plaintiff would need to take unscheduled breaks every 10 to 15 minutes, must rest lying down for more than four hours in an eight hour workday, could only stand or walk for one hour cumulatively in an eight hour workday, and could rarely use her right

---

[4] In so finding, the Court is mindful of the fact that Dr. Heder is neither a mental health specialist nor was he providing treatment for plaintiff's somatoform disorder. *See Chaudhry v. Astrue*, 688 F.3d 661, 670-71 (9th Cir. 2012) (affirming the ALJ's rejection of a physician's opinion regarding exertional limitations that was based predominantly on the claimant's somatic complaints). The Court also notes there is no medical evidence, credible or otherwise, from any treating or examining source reflecting specific functional limitations associated with plaintiff's somatoform disorder. *See* Tr. 605 (Ms. Hurlong opining that plaintiff's "mental health is not limiting her from working").

hand for reaching, handling, or fingering. Tr. 631-32. He also completed an assessment of her mental functioning, in which he endorsed major problems in most areas. Tr. 632-34.

The ALJ afforded "no weight" to Dr. Bean's opinion because it "was primarily based on [plaintiff's] less than fully credible self-report" and contravened by the other medical evidence of record. As noted above, an ALJ need not accept a medical opinion that is premised on an un-credible claimant's self-reports or inconsistent with the record. *Tommasetti*, 533 F.3d at 1041.

Here, both plaintiff and Dr. Bean made clear that his check-the-box assessment was premised on plaintiff's un-credible self-reports, as opposed to Dr. Bean's own independent medical judgment. The two chart notes from Dr. Bean in the record before the Court do not indicate that he independently examined plaintiff in any meaningful way prior to rendering his opinion or reviewed her longitudinal medical history. Tr. 592-96. Furthermore, these chart notes establish that Dr. Bean was not treating plaintiff for her mental impairments. *Id.* Finally, Dr. Bean's opinion is contradicted Dr. Heder, who opined that plaintiff could stand for eight hours, and the other minimal objective physical findings. *See, e.g.*, Tr. 386, 426, 431-32, 523-24, 559. The ALJ's evaluation of the medical opinion evidence is affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this <u>14th</u> day of June 2016.

_____
Michael J. McShane
United States District Judge

15 – OPINION AND ORDER